UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| IN RE: DARVOCET, DARVON AND PROPOXYPHENE PRODUCTS LIABILITY LITIGATION | Master File No. 2: 11-md-2226-DCR<br>MDL Docket No. 2226 |
| *Niebuhr v. Xanodyne Pharm., Inc., et al.*, | Civil Action No. 2: 11-202-DCR |
| *Curtis v. Xanodyne Pharm., Inc., et al.*, | Civil Action No. 2: 11-344-DCR |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**MEMORANDUM OPINION AND ORDER REGARDING
DEFENDANT XANODYNE PHARMACEUTICALS, INC.'S
MOTION TO DISMISS IN TWO CALIFORNIA CASES**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Xanodyne Pharmaceuticals, Inc. ("Xanodyne") has filed a motion to dismiss the complaints in the above-captioned matters. [MDL Record No. 1906] Xanodyne argues that the actions should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because the Court lacks personal jurisdiction over Xanodyne. In the alternative, it seeks dismissal pursuant to Rule 12(b)(6), asserting that the plaintiffs have failed to state a claim upon which relief may be granted because their complaints do not allege the ingestion of a product manufactured, sold, or distributed by Xanodyne. The plaintiffs counter that their misrepresentation claims are viable under California law. For the reasons explained below, the Court will deny Xanodyne's motion to dismiss for lack of personal jurisdiction. Xanodyne's Rule 12(b)(6) motion to dismiss will be granted, in part.

I.      **Rule 12(b)(2)**

Xanodyne argues that it is entitled to dismissal of the claims against it because "there is no personal jurisdiction over Xanodyne in California." [MDL Record No. 1906-2, p. 4] Pursuant to the statute governing multidistrict litigation (MDL) actions, 28 U.S.C. § 1407, the transferee court possesses the powers of the transferor court. *Howard v. Sulzer Orthopedics, Inc.*, 382 F. App'x 437, 442 (6th Cir. 2010). Thus, for present purposes, the relevant question is whether Xanodyne is subject to personal jurisdiction in the Eastern District of California, where the two actions subject to this motion were originally filed.

It is well-established that the plaintiff bears the burden of demonstrating personal jurisdiction. *See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 520 (6th Cir. 2006) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). A plaintiff facing "a properly supported motion for dismissal"[1] on personal jurisdiction grounds "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff can meet this burden by "establishing with reasonable particularity sufficient contacts between" the defendant and the forum state. *Neogen*, 282 F.3d at 887 (internal quotation marks omitted). When the Court "relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, . . . the plaintiff's burden is 'relatively slight.'" *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (quoting *Am. Greetings Corp. v.*

---

1      Xanodyne submits the affidavit of Natasha Giordano, President and Chief Executive Officer of Xanodyne, in support of its motion. [MDL Record No. 1906-4] Giordano states that Xanodyne is "a company registered to do business and organized under the laws of the state of Delaware, with its principal place of business in the Commonwealth of Kentucky." [*Id.* ¶ 3]

*Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Thus, the plaintiffs "must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen*, 935 F.2d at 1458.

The Court may exercise personal jurisdiction over Xanodyne only if it is authorized by California law and otherwise consistent with the Due Process Clause of the Fourteenth Amendment. California's long-arm statute allows the exercise of personal jurisdiction over nonresident defendants "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Personal jurisdiction may be found to exist either generally or specifically. General jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Specific personal jurisdiction exists where the defendant "purposefully avails himself of the privilege of conducting activities in the forum" and the claim "arises out of or relates to the defendant's forum-related activities." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (internal quotation marks omitted).

### A. Specific Jurisdiction

The plaintiffs have shown that Xanodyne is subject to specific jurisdiction in this matter. Xanodyne asserts that "Xanodyne did no business and derived no revenue in California from sales of any propoxyphene-containing product to plaintiffs." [Record No. 1906-2, p. 7] Yet that is not the test. Rather, the suit must arise from Xanodyne's "forum-related activities." *CollegeSource, Inc.*, 653 F.3d at 1076.

The Sixth Circuit has identified three elements that must be present to support a finding of specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012) (internal quotation marks omitted); *see Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Xanodyne argues that the plaintiffs have failed to meet the second prong of the test for specific jurisdiction because they do not allege the ingestion of a Xanodyne product. [*See* Civil Action No. 2: 11-202, Record No. 64 ¶¶ 6-8 (*Niebuhr* Amended Complaint); Civil Action No. 2: 11-344, Record No. 46 ¶ 7 (*Curtis* Amended Complaint).]

The plaintiffs have alleged, however, that Xanodyne "intentionally made false misrepresentations concerning the safety and effectiveness associated with propoxyphene products," which caused the plaintiffs' physicians to "rel[y] and act[] upon [the] misrepresentations by prescribing . . . a propoxyphene product." [MDL Record No. 1946, p. 10] In other words, the plaintiffs assert that Xanodyne engaged in a pattern of behavior, directed at California, that resulted in their injuries because Xanodyne markets its products in California. The plaintiffs set forth specific facts in their response which indicate that Xanodyne provides drug samples "to individual healthcare professionals intended for free distribution to patients" and makes payments for "advising, consulting, training or market research services" in the state. [*Id.*, p. 6] Therefore, the plaintiffs' claims arise from Xanodyne's efforts to serve the market in

California and Xanodyne is subject to specific jurisdiction in that forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### B. General Jurisdiction

Because Xanodyne is subject to specific jurisdiction in the above-captioned matters, it is not necessary to analyze in detail the parties' arguments concerning general jurisdiction. However, the Court notes that even if specific jurisdiction were lacking here, the plaintiffs could show that Xanodyne is subject to general personal jurisdiction in California. Xanodyne contends that it is not subject to general jurisdiction because it is not "at home in California." [Record No. 1906-2, p. 9] Quoting the Supreme Court's decision in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), Xanodyne asserts that general jurisdiction is "proper only where the defendant is 'at home.'"[2] [Record No. 1906-2, p. 9] According to Xanodyne's selective quotation of *Goodyear*, a corporation could only be subject to general jurisdiction in the state where it is incorporated or where it maintains its principal place of business. Yet this has never been the test for general jurisdiction, and neither *Goodyear* nor *J. McIntyre* marked a departure from the long line of precedent defining the boundaries of general personal jurisdiction. Read in context, the *Goodyear* Court merely reaffirmed the rule that general jurisdiction may be asserted over corporations where "their affiliations with the State are so

---

2  Xanodyne also cites *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), for the proposition that "'those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.'" [MDL Record No. 1906-2, p. 9 (quoting *J. McIntyre*, 131 S. Ct. at 2787)] While this is the general rule, there are exceptions. Indeed, the *J. McIntyre* Court listed a "number of ways" in which an out-of-state entity "may submit to a State's authority." 131 S. Ct. at 2787.

'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945)).

Exercising general personal jurisdiction over a defendant comports with due process if the "'defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen*, 444 U.S. at 295). The Supreme Court has rejected a "stream-of-commerce" approach to general jurisdiction; the "[f]low of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction," but not general jurisdiction. *Goodyear*, 131 S. Ct. at 2855. Rather, the plaintiff must establish "circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State." *J. McIntyre*, 131 S. Ct. at 4787. The Court must consider the "amount and kind of activities which must be carried on" by the defendant in the forum state on a case-by-case basis. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).

The plaintiffs contend that "the propoxyphene-containing drugs that they ingested in California were prescribed by doctors in California, who received and justifiably relied on Xanodyne's misrepresentations in California." [Record No. 1963, p. 1] In addition, the plaintiffs incorporate by reference the opposition to Xanodyne's motion to dismiss in a different case in this MDL proceeding. [*Id.*; *see* Record No. 1946, pp. 2-12] In that opposition, the plaintiffs contended that "Xanodyne is registered with the California Secretary of State to do business in the State of California." [*Id.*, pp. 5-6] Moreover, they indicated that Xanodyne's

website contains a link to a document listing "certain items and payments it provides in California that are excluded from the annual limits placed on the company under California law." [*Id.*, p. 6] Finally, the plaintiffs listed several securities transactions Xanodyne has conducted in California. [*Id.*, pp. 7-8]

These facts are sufficient to show that Xanodyne is subject to general personal jurisdiction in California. In *Goodyear*, the Court identified certain characteristics of a business that may support a finding of personal jurisdiction in a given state: (1) registration to do business in that state; (2) maintaining employees or bank accounts in the state; (3) designing, manufacturing, or advertising products in the state; (4) and soliciting business, selling, or shipping products to the state. 131 S. Ct. at 2852; *see Bancroft & Masters, Inc.*, 223 F.3d at 1086 (listing general jurisdiction factors such as "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there"). Xanodyne is registered to do business in California, and the plaintiffs have provided documentation of at least some of Xanodyne's extensive activities within the state. The plaintiffs' opposition to Xanodyne's motion "set[s] forth specific facts," which sufficiently demonstrate that the Court has general jurisdiction over Xanodyne. *Theunissen*, 935 F.3d at 1458. Therefore, the plaintiffs have satisfied their burden under Rule 12(b)(2).

### II. Rule 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure provides that, to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(1). When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

Xanodyne argues that because the plaintiffs do not allege that they ingested a drug manufactured, sold, or distributed by Xanodyne, their complaints cannot survive the motion to dismiss. The Court has determined that it is a general principle of products liability law that a plaintiff must allege sufficient facts to allow the reasonable inference that the injury-causing product was sold, manufactured, or distributed by the defendant. [*See* MDL Record No. 1274, p. 5] This principle is no less true in California than in any other state previously considered by the Court. *See Murphy v. E.R. Squibb & Sons, Inc.*, 710 P.2d 247, 253 (Cal. 1985) ("The general rule is that the burden of proof is on the plaintiff to establish that the injuries she suffered were

caused by the conduct of the defendant.").[3] The plaintiffs do not dispute that they have failed to allege the ingestion of a Xanodyne product. Instead, they incorporate by reference arguments already rejected by the Court. [MDL Record No. 1963, p. 2; *see* MDL Record No. 914] Thus, the Court will dismiss the plaintiffs' negligence claims against Xanodyne.

The plaintiffs also argue that they have asserted valid misrepresentation claims against Xanodyne because, under California law, a "brand manufacturer may be held liable for its misrepresentations about its drug if they cause a plaintiff to ingest and suffer harm from a generic version of its drug." [MDL Record No. 1946, p. 13; *see* MDL Record No. 1963, p. 2] The Court has previously found unpersuasive the argument that the manufacturer of a brand-name prescription drug may be held liable under a misrepresentation theory of liability to a plaintiff who ingested a generic product. [*See* MDL Record No. 1274, pp. 9-14] However, this case implicates the laws of California, where the case relied on by the plaintiffs, *Conte v. Wyeth, Inc.*, was decided. 85 Cal. Rptr. 3d 299 (Cal. Ct. App. 2008), *cert. denied*, 2009 Cal. LEXIS 233, at *1 (Cal. Jan. 21, 2009). Therefore, the Court must consider in more detail the law of California with regard to the misrepresentation theory advanced by the plaintiffs.[4]

A federal court sitting in diversity is bound to follow the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In other words, a federal district court is bound by any precedent that would control the decision of a trial court in the forum state.

---

3   *Murphy* discussed the "market share" exception to this rule, which is inapplicable here because the plaintiffs specifically identified the manufacturers of the products ingested. [*See* Civil Action No. 11-202, Record No. 64 ¶¶ 6-8; Civil Action No. 11-344, Record No. 46 ¶ 7.]

4   The Court's previous decisions rejecting misrepresentation claims against Xanodyne involved motions to dismiss pending in cases that implicated the laws of states other than California. [*See, e.g.*, MDL Record No. 1274, pp. 12-13.]

*See Hosp. Underwriting Grp., Inc. v. Summit Health Ltd.*, 63 F.3d 486, 493 (6th Cir. 1995) ("A federal district court in a diversity case is not free to ignore applicable state law, even if the law is unpopular or represents a minority view."). And, in an MDL proceeding, "the forum state is typically the state in which the action was initially filed before being transferred to the MDL court." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 454 (E.D. La. 2006). The above-captioned actions were filed in California state courts and removed to the United States District Court for the Eastern District of California. [*See* Civil Action No. 11-202, Record No. 1; Civil Action No. 11-344, Record No. 1.] Thus, the Court must apply California law to the issues raised in these cases.[5]

In *Conte*, the California Court of Appeals reasoned that a brand-name manufacturer "knows or should know that a significant number of patients whose doctors rely on its product information . . . are likely to have generic [medication] prescribed or dispensed to them." 85 Cal Rptr. 3d at 315. The court, relying in part on sections 310 and 311 of the Restatement (Second) of Torts, looked "primarily to the foreseeability of physical harm" to determine the duty owed by a brand manufacturer. *Id.* at 312-13. It found that a brand manufacturer "should reasonably perceive that there could be injurious reliance on its product information" by patients who ingest a generic form of the drug. *Id.* As a result, the *Conte* court concluded that the "duty of care in disseminating product information" should extend to those patients who are injured by generic drugs. *Id.* at 318.

---

5       Xanodyne does not dispute that California law governs the cases subject to its motion. [*See* MDL Record No. 1906-2, pp. 9-18.]

Nevertheless, Xanodyne contends that "dismissal of [the] plaintiffs' claims is warranted under long-standing principles of California law." [MDL Record No. 1906-2, p. 13] It quotes the California Supreme Court's decision in *O'Neil v. Crane Co.*, 266 P.3d 987 (Ca. 2012), for the proposition that "products liability in California has always been premised on harm caused by deficiencies in the defendant's own product." *Id.* at 995. The *O'Neil* court held that a "product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm." *Id.* at 991. The defendant in *O'Neil* was the manufacturer of "valves and pumps used in Navy warships." *Id.* The plaintiffs brought a wrongful death claim against the manufacturer, alleging that their decedent was injured by the asbestos released from products made by "third parties and added to the pumps and valves postsale." *Id.* Rejecting the plaintiffs' claim, the court explained that a defendant's duty to the consumers of its product does not "extend to preventing injuries caused by other products that might foreseeably be used in conjunction with [the] defendant's product." *Id.* (emphasis omitted).

*O'Neil* is distinguishable from the present case.[6] Here, the plaintiffs do not base their claims on the combination of Xanodyne's product with the product of another company. Rather, they assert that Xanodyne made certain misrepresentations about propoxyphene that caused them to "ingest and suffer harm from a generic version of [the] drug." [MDL Record No. 1946, p. 13]

---

6   The Court does not view *O'Neil* as limiting the holding in *Conte*, as suggested by Xanodyne. As Xanodyne concedes, the *O'Neil* court "gave no recognition to *Conte* at all." [MDL Record No. 1906-2, p. 12 n.8] If the California Supreme Court had wished to overrule *Conte*, it could have done so explicitly. The reason for the *O'Neil* court's complete lack of citation to *Conte* is, therefore, most likely that the court believed the case to be irrelevant to determination of the issue at hand. This Court agrees.

Because the plaintiffs' claims do not involve "injuries caused by adjacent products or replacement parts that were made by others," *O'Neil* is inapposite. 266 P.3d at 991.

The Court has previously concluded — in cases implicating the law of states other than California — that, "in the absence of any binding authority that would dictate the application of the rule proffered by the plaintiffs, the Court must conclude that Xanodyne cannot be held liable to plaintiffs who consumed other manufacturers' drugs." [MDL Record No. 1274, p. 14] *Conte* is a published case from the California Court of Appeals. "Under the doctrine of stare decisis, all [California] tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction." *Auto Equity Sales, Inc. v. Superior Court of Santa Clara Cnty.*, 369 P.2d 937, 939 (Cal. 1962) (explaining that the "[d]ecisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of" California). Because a California trial court would be required to apply the holding in *Conte*, this Court is similarly bound.

Two recent decisions have recognized *Conte* as binding authority. First, as the plaintiffs point out, the District Court for the Central District of California favorably cited *Conte* when it held that, after the decision in *Conte*, "the law permitted [the plaintiff] a cause of action" against a brand-name manufacturer even though she ingested a generic drug. *Dorsett v. Sandoz, Inc.*, No. CV 06-7821 AHM, 2009 U.S. Dist. LEXIS 108142, at *6 (C.D. Cal. Oct. 28, 2009); *see id.* at *7 n.3 ("Defendant argues unconvincingly that *Conte* did not create a new cause of action under California law."). More recently, the Ninth Circuit cited *Conte* when explaining that

> California's negligence law may impose on a manufacturer a duty to warn individuals who, while not users of its products, could foreseeably rely on its

>  warnings. For example, when the user of a generic pharmaceutical sues the manufacturer of the brand name medication for the warning included in the Physician's Desk Reference, the user cannot recover under strict liability because he or she was not injured by the manufacturer's own products. However, because the brand name manufacturers are responsible for disseminating the information in the Physician's Desk Reference, which others would foreseeably rely upon, they may be held liable under negligence.

*Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 949 (9th Cir. 2012) (internal citations omitted). These decisions bolster the Court's determination that the misrepresentation claims asserted by the plaintiffs are valid under California law.

In short, Xanodyne has failed to meet its burden of showing that the plaintiffs' misrepresentation claims are not viable under California law. Its final argument — that the plaintiffs' claims fail on "'causation' grounds" because "product identification is a required component of the causation element in product liability cases" — is also unavailing. [MDL Record No. 1906-2, p. 17] Xanodyne cites the California Supreme Court's decision in *Bockrath v. Aldrich Chemical Co.*, 980 P.2d 398 (Cal. 1999), for the proposition that a "plaintiff must prove that the defective products supplied by the defendants were a substantial factor in bringing about his or her injury." *Id.* at 403 (internal quotation marks omitted). However, this portion of the *Bockrath* opinion concerns the standard of proof for the element of causation, not the requirements for allegations to adequately plead causation. Under California law, to satisfy the pleading requirement in a case where the "pleaded facts of negligence and injury do not naturally give rise to an inference of causation," a "plaintiff must allege facts . . . explaining how the conduct caused or contributed to the injury." *Id.* Assuming that *Bockrath* is applicable here,[7]

---

7  This assumption is debatable, as *Bockrath* involved claims for "negligence, strict liability for failure to warn and for design defect, ultrahazardous activity, fraudulent concealment, breach of warranty, and

the plaintiffs in the above-captioned actions have met this burden because their complaints outline Xanodyne's conduct and assert that it caused or contributed to their injuries. [*See, e.g.*, Civil Action No. 11-202, Record No. 64 ¶¶ 316-333] Therefore, the plaintiffs have sufficiently pleaded their misrepresentation claims, and dismissal is not warranted.

### III. Conclusion

Xanodyne is subject to personal jurisdiction in California. And while the plaintiffs' negligence claims will be dismissed due to their failure to allege the ingestion of a Xanodyne product, the plaintiffs have stated a claim against Xanodyne upon which relief may be granted with respect to the counts of their complaints alleging misrepresentation. Accordingly, it is hereby

**ORDERED** as follows:

1. Xanodyne's Motion to Dismiss [MDL Record No. 1906] is **GRANTED**, in part.

2. With the exception of the plaintiffs' misrepresentation claims, the claims asserted against Defendant Xanodyne Pharmaceuticals, Inc. in the above-captioned cases [Civil Action No. 2: 11-202, Record No. 64, Count XII (*Niebuhr* Amended Complaint); Civil Action No. 2: 11-344, Record No. 46, Count XII (*Curtis* Amended Complaint)] are **DISMISSED**, with prejudice.

---

battery," but not misrepresentation. 980 P.2d at 402. Specifically, the *Bockrath* court addressed a situation in which "the pleaded facts of negligence and injury do not naturally give rise to an inference of causation." *Id.* at 403 (internal quotation marks omitted). The complaints in the above-captioned actions do not suffer from the same problem.

3.     The plaintiffs' misrepresentation claims [Civil Action No. 2: 11-202-DCR, Record No. 64, Counts XIII, XIV, & XV (*Niebuhr* Amended Complaint); Civil Action No. 2: 11- 344-DCR, Record No. 46, Counts XIII, XIV, & XV (*Curtis* Amended Complaint)] remain pending.

This 5th day of September, 2012.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge